560 So.2d 782 (1990)
Gene BROWN, etc., Petitioner,
v.
APALACHEE REGIONAL PLANNING COUNCIL, Respondent.
No. 74531.
Supreme Court of Florida.
April 26, 1990.
*783 Gene D. Brown, Tallahassee, for petitioner.
Linda Loomis Shelley and Tommy E. Roberts, Jr. of Dixon, Blanton & Shelley, Tallahassee, for respondent.
SHAW, Justice.
We have for review Apalachee Regional Planning Council v. Brown, 546 So.2d 451, 452 (Fla. 1st DCA 1989), to answer the following certified question:
WHETHER THE POWER TO SET AND COLLECT FEES FOR DEVELOPMENT OF REGIONAL IMPACT APPLICATION AND REVIEW COSTS, AS EXERCISED PURSUANT TO RULE 29L-2.02, WAS PROPERLY DELEGATED TO THE APALACHEE REGIONAL PLANNING COUNCIL BY THE FLORIDA LEGISLATURE.
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in the affirmative and approve the decision of the district court.
In October 1984, Brown submitted an application to the Apalachee Regional Planning Council (ARPC) to review his proposed substantial deviation from a development of regional impact (DRI)[1] pursuant to chapter 29L-2, Florida Administrative Code. In accordance with Florida Administrative Code Rule 29L-2.02,[2] Brown remitted a deposit of $4,000 and was charged for 100% of the reviewing costs of his application up to $10,000, and 80% of the cost of *784 the portion exceeding $10,000. The final amount due was $14,856.74. Brown failed to pay the full amount, and ARPC filed a complaint in October 1986 seeking judgment. The circuit court declared the rule an unconstitutional delegation of legislative power. It found that the underlying legislation contained no guidelines or standards for determining when fees are to be assessed, against whom they are to be levied, and the fee amount. The district court reversed and ruled that more specific guidelines were not required because the underlying statutes concern the public health, welfare, and safety and they are thus an exception to the specific guidelines requirement, and in any event the fees constitute merely "technical implementations of a fundamental legislative policy decision." Brown, 546 So.2d at 453. The court certified the above question.
The nondelegation doctrine arises from article II, section 3, of the Florida Constitution, which provides that no branch of government shall exercise powers belonging to another. The doctrine essentially prohibits the legislature from delegating to another branch the power "`to enact a law or to declare what the law shall be.'" Conner v. Joe Hatton, Inc., 216 So.2d 209, 211 (Fla. 1968) (quoting State v. Atlantic Coast Line Ry., 56 Fla. 617, 47 So. 969, 976 (1908)). All "fundamental and primary policy decisions" must be made by the legislature, and the administration of legislative programs must be pursuant to "some minimal standards or guidelines." Askew v. Cross Key Waterways, 372 So.2d 913, 925 (Fla. 1978). The specificity of the guidelines will depend on the complexity of the subject and the "degree of difficulty involved in articulating finite standards." Id. at 918. The test in determining the sufficiency of guidelines is whether they are adequate "to enable the agency and the courts to determine whether the agency is carrying out the legislature's intent." Department of Ins. v. Southeast Volusia Hosp. Dist., 438 So.2d 815, 819 (Fla. 1983), appeal dismissed, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984). Without sufficient standards, the agency becomes "the lawgiver rather than the administrator of the law," Cross Key, 372 So.2d at 919, and is not precluded from "acting through whim, showing favoritism, or exercising unbridled discretion," Lewis v. Bank of Pasco County, 346 So.2d 53, 56 (Fla. 1976).
Brown argues that the statutory provisions underlying rule 29L-2.02 are vague and practically identical to those that were declared unconstitutional in Bank of Pasco County (statute invalid that gave state comptroller discretionary authority to declare bank investigation records public); Sarasota County v. Barg, 302 So.2d 737 (Fla. 1974) (sections of conservation act that prohibited "undue or unreasonable dredging" and "unreasonable destruction of natural vegetation" held impermissibly broad); and Joe Hatton, Inc. (statutory sections that gave agriculture commissioner power to establish programs to "remov[e] trade barriers" and prohibit "unfair trade practices" held invalid). We disagree. Each of the above provisions delegated to the executive or judicial branches an essentially unrestricted power to declare what the law is without providing minimal standards or guidelines. Such is not the case with the instant statutes and rule.
Chapter 160 provides for the creation of regional planning councils (RPCs) to deal with the problems of growth and development, and gives each RPC the power "[t]o fix and collect ... fees when appropriate." § 160.02(12), Fla. Stat. (1983). Chapter 163 provides that local governments may agree to jointly exercise their power in order to make efficient use of local resources, and that such agreements may provide for "[t]he fixing and collecting of ... fees, where appropriate." § 163.01(5)(h), Fla. Stat. (1983). Chapter 380 contains detailed provisions relating to DRIs and provides that regional planning agencies "may adopt additional rules ... to promote efficient review of developments-of-regional-impact applications." § 380.06(22)(c), Fla. Stat. (1983).
*785 Chapters 160 and 163 thus give the ARPC authority to levy fees where "appropriate." Adoption under chapter 380 of a cost-based fee rule clearly promotes the "efficient review" of DRI applications and therefore is "appropriate." The legislature has set forth, in considerable detail, specific criteria to be used by the ARPC in conducting DRI reviews: which development projects must be reviewed, when review is to occur, who is to conduct review, and how review is to be performed. See ch. 380, Fla. Stat. (1983). Under these circumstances, given the highly technical nature of the DRI review process, details relating to the imposition of a cost-based review fee can be viewed as a technical matter of implementation rather than a fundamental policy decision. We note that the legislature has since amended chapter 380 to give the state land planning agency express authority to establish by rule the technical criteria for assessing such fees.[3]
We conclude that the statutory scheme established in chapters 160, 163, and 380 contains sufficient indicia of legislative purpose to render the cost-based fee provisions of rule 29L-2.02 valid. We answer the certified question in the affirmative and approve the decision of the district court.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Section 380.06, Florida Statutes (1983), defines development of regional impact:

(1) The term "development of regional impact," as used in this section, means any development which, because of its character, magnitude, or location, would have a substantial effect upon the health, safety, or welfare of citizens of more than one county.
[2] The rule provides:

29L-2.02 Fees. Each DRI application, except for applications submitted by a local, state or federal agency shall be accompanied by a fee deposit, as detailed below. When required, no application shall be accepted for review unless accompanied by this fee deposit. This fee deposit shall be combined with other funds available to perform the function outlined by Section 380.06, Florida Statutes. The amount of the application review fee shall be determined by the following procedures:
(1) The applicant shall remit a fee deposit of four thousand dollars ($4000.00) payable to the Council for review.
(2) This fee deposit shall set up an account for the applicant with the Council. The Council shall keep accurate records of the actual costs which shall be deducted from the deposit fee, with any amount remaining refunded to the applicant. If the cost of the review exceeds the fee deposit, the applicant shall be liable to the Council for 100% of the review cost up to $10,000.00 and 80% of the review cost over $10,000.00.
We note that the rule has since been renumbered and revised. The current version provides:
29L-2.002. Fees. Each DRI application, except for applications submitted by a local, state or federal agency shall be accompanied by a fee deposit, as detailed below. Governmental agencies shall pay after receipt of an invoice and are not required to pay a deposit in advance. When required, no application shall be accepted for review unless accompanied by this fee deposit. This fee deposit shall be combined with other funds available to perform the function outlined by Section 380.06, Florida Statutes. The amount of the application review fee shall be determined by the following procedures:
(1) The applicant shall remit a fee deposit of 10,000 dollars payable to the Council for review at the time the application is submitted.
(2) An additional fee deposit of 10,000 dollars is required at the time sufficiency is declared by ARPC.
(3) This fee deposit shall set up an account for the applicant with the Council. The Council shall keep accurate records of the actual costs which shall be deducted from the deposit fee, with any amount remaining refunded to the applicant. If the cost of the review exceeds the fee deposit, the applicant shall be liable to the Council for 100 percent of the review costs.
(4) No fees or costs are required of an applicant for the initial pre-application conference required by 380.06(7). Further pre-application assistance shall be provided at the applicant's request. Charges for this assistance will be based upon reasonable fees for professional services and costs incurred. A deposit shall be required.
[3] Section 380.06(23)(d), Florida Statutes (1989), provides:

(d) Regional planning agencies which perform development-of-regional-impact and Florida Quality Development review are authorized to assess and collect fees to fund the costs, direct and indirect, of conducting the review process. The state land planning agency shall adopt rules to provide uniform criteria for the assessment and collection of such fees. The rules providing uniform criteria shall not be subject to rule challenge under s. 120.54(4) or to drawout proceedings under s. 120.54(17), but, once adopted, shall be subject to an invalidity challenge under s. 120.56 by substantially affected persons. Until the state land planning agency adopts a rule implementing this paragraph, rules of the regional planning councils currently in effect regarding fees shall remain in effect. Fees may vary in relation to the type and size of a proposed project, but shall not exceed $75,000, unless the state land planning agency, after reviewing any disputed expenses charged by the regional planning agency, determines that said expenses were reasonable and necessary for an adequate regional review of the impacts of a project. Regional planning agencies shall not collect fees from an applicant to fund the cost of appeals filed pursuant to s. 380.07.